UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------

RICHARD J. MCCORD as Chapter 7 Trustee of
the Estate of AMEER MOHAMEAD HANIFF
a/k/a AMEER HANIFF, a/k/a AMEER
MOHAMMED HANIFF, a/k/a ANEER HANIFF,

**MEMORANDUM & ORDER**
22-MC-3611 (MKB)

Plaintiff,

v.

GOVERNMENT EMPLOYEES INSURANCE
COMPANY,

Defendant.
-------------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On October 31, 2019, Ameer Mohamead Haniff, also known as Ameer Haniff, also known as Ameer Mohammed Haniff, also known as Aneer Haniff, filed for bankruptcy protection under Chapter 7 of Title 11 of the United States Code ("Bankruptcy Code") in the Bankruptcy Court and Richard J. McCord was appointed as Chapter 7 Trustee of Haniff's Estate.[1]  On October 13, 2022, Trustee McCord filed a Complaint against Government Employees Insurance Company ("GEICO") in the Bankruptcy Court (the "Adversary Proceeding"), alleging breach of contract and bad faith.  (Compl., annexed to Matthew V. Spero Decl. ("Spero Decl.") as Ex. A, Docket Entry No. 1-1.)  On November 29, 2022, GEICO filed a motion before the Court to withdraw the reference of this Adversary Proceeding, pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011(a), and Rule 5011-1 of the Local

---

[1] (Def.'s Mot. to Withdraw 2 ("Def.'s Mot."), Docket Entry No. 1; Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), Docket Entry No. 5.)  The Court relies on the facts as set forth in the parties' submissions for the purposes of this motion.  The facts are undisputed unless otherwise noted.

Bankruptcy Rules for the Eastern District of New York. (Def.'s Mot.; Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 6.) Trustee filed its opposition on January 23, 2023. (Pl.'s Opp'n.)

For the reasons discussed below, the Court grants the motion.

## I. Background

### a. State proceeding

In September of 2016, Mario Umana commenced a personal injury action against Haniff in the New York Supreme Court, Queens County, alleging that Haniff was involved in an automobile accident that caused the loss of Umana's leg and other injuries, leading to the loss of services to Umana's spouse (the "Umana Action"). (Def.'s Mot. 1–2; Pl.'s Opp'n 1–2.) At the time of the accident, Haniff's vehicle was insured by GEICO, which was obliged to provide Haniff with indemnification and defense against lawsuits.[2] (Def.'s Mot. 1–2; Pl.'s Opp'n 1.) After Haniff and GEICO failed to appear or otherwise respond to the Umana Action, Umana moved for a default judgment on March 7, 2017, which was granted on April 6, 2017. (Def.'s Mot. 2; Pl.'s Opp'n 2.) On January 7, 2019, the state court entered judgment in the amount of $10,331,690.96 against Haniff (the "Umana Judgment").[3] (Def.'s Mot. 2; Pl.'s Opp'n 2.)

---

[2] Haniff's vehicle was insured by GEICO with liability limits of $25,000 per person. (Def.'s Mot. 1–2; Pl.'s Opp'n 2.) In August of 2016, prior to the filing of the Umana action, GEICO offered to settle Umana's claim for $25,000. (Def.'s Mot. 1–2.) Umana rejected the offer and subsequently commenced the Umana Action. (*Id.*)

[3] By letter dated April 16, 2019, GEICO disclaimed coverage on grounds of untimely notice and the insured's lack of cooperation. (Def.'s Mot. 2.) However, on May 20, 2918, GEICO paid its $25,000 policy limit to Umana's counsel and wife. (*Id.*)

b. **Bankruptcy Court proceeding**

Since Haniff filed for Chapter 7 bankruptcy protection on October 13, 2019, Judge Elizabeth S. Stong has presided over twenty pretrial conferences relating to an adversary proceeding between Haniff and Umana, and held seven hearings and adjudicated seven motions involving the parties. (Pl.'s Opp'n 2–3; Def.'s Reply 2.) On August 24, 2020, the Trustee moved for permission to serve a pre-suit Bankruptcy Rule 2004 subpoena on GEICO, and after a hearings, Judge Stong granted the request on November 20, 2020. (Pl.'s Opp'n 11; Def.'s Reply 2.) On February 13, 2021, GEICO moved to quash the subpoena, which Judge Stong denied after a hearing. (Pl.'s Opp'n 11.) On October 8, 2021, GEICO moved to vacate the appointment of Umana's counsel as Trustee's counsel, which led to additional conferences and hearings. (Pl.'s Opp'n 12; Def.'s Reply 2.) Finally, on May 11, 2022, Judge Stong directed the parties to proceed to discovery and ordered GEICO to produce witnesses and documents in response to the subpoena. (Pl.'s Opp'n 12.) GEICO has since produced over 700 pages of document discovery related to claims correspondence and the claim register, and two depositions of GEICO claims adjusters have been conducted. (*Id.*)

c. **Adversary Proceeding**

On October 13, 2022, the Trustee filed the Adversary Proceeding. (Compl. 17.) In the Complaint, Trustee alleges breach of contract and bad faith, based on GEICO's alleged breached of its insurance contract with Haniff and also alleges bad faith in failing to defend Haniff in the Umana Action, resulting in the Umana Judgment. (*Id.* ¶¶ 136–148.) The Trustee seeks damages in the full amount of the Umana Judgment. (*Id.* at 16–17.) On November 21, 2022, GEICO filed its Answer, denying that the Adversary Proceeding was a core proceeding and stating that it

did not consent to entry of judgment by the Bankruptcy Court. (Answer 12, annexed to Spero Decl. as Ex. B, Docket Entry No. 1-1.)

On November 29, 2022, GEICO filed before this Court a motion to withdraw the reference of this Adversary Proceeding (the "Motion"). (Def.'s Mot.)

**II. Discussion**

    **a. Standard of review**

District courts have original jurisdiction but not exclusive jurisdiction over civil proceedings "arising under," "arising," or "related to" cases under Title 11 of the United States Code. 28 U.S.C. § 1334(b). "Each district court may provide that any or all cases under [T]itle 11 and any or all proceedings arising under [T]itle 11 or arising in or related to a case under [T]itle 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). The Eastern District of New York has a standing order that automatically refers bankruptcy cases to bankruptcy judges. *In re Referral of Matters to Bankruptcy Judges* (E.D.N.Y. Dec. 5, 2012); *see Thaler v. Parker*, 525 B.R. 582, 584 (E.D.N.Y. 2014). However, "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). The moving party bears the burden of demonstrating "cause." *Thaler*, 525 B.R. at 585; *see also 29 Beekman Corp. v. Wansdown Props. Corp. N.V.*, No. 20-CV-2280, 2021 WL 4481006, at *6 (S.D.N.Y. Sept. 29, 2021).

To determine whether a party has demonstrated "cause" to withdraw a reference, the Second Circuit has instructed district courts to first consider whether a case involves "core matters," which bankruptcy courts have authority to decide, or "non-core matters," as to which bankruptcy courts may only issue proposed findings of facts and conclusions of law subject to de

4

novo review by the district court. *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993) (quoting 28 U.S.C. § 157); *In re N. Boulevard Automall, LLC*, No. 20-MC-142, 2022 WL 5184729, at *3 (E.D.N.Y. Oct. 5, 2022) (citing *Orion*, 4 F.3d at 1101) (same). The Second Circuit explained that it is on "this issue that questions of efficiency and uniformity will turn." *In re Orion Pictures Corp.*, 4 F.3d at 1101.

Since *Orion*, however, the Supreme Court has held that bankruptcy courts lack authority to issue final judgment in some "core" proceedings. *Stern v. Marshall*, 564 U.S. 462, 469, 482 (2011). In such cases, the claims may still proceed before a bankruptcy court as "non-core" and "[t]he bankruptcy court should hear the proceeding and submit proposed findings of fact and conclusions of law to the district court for de novo review and entry of judgment." *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 36 (2014). Because the core/none-core determination is no longer dispositive of whether a bankruptcy court has authority to finally adjudicate a matter, district courts now consider whether the bankruptcy court has authority to enter a final judgment, in order to determine whether the movant has demonstrated "cause" to withdraw a reference, as it is now on this determination that questions of efficiency and uniformity turn. *In re N. Boulevard Automall, LLC*, 2022 WL 5184729, at *3 (citations omitted) (collecting other district court cases); *see also Thaler*, 525 B.R. at 585 ("[A]fter *Stern*, the relevant inquiry under the first prong of the *Orion* test is not whether a matter is core or non-core, but whether the bankruptcy court has authority to finally adjudicate the matter." (citation omitted)).

However, whether a bankruptcy court lacks authority to finally adjudicate a claim is also not dispositive. *In re Ne. Indus. Dev. Corp.*, 511 B.R. 51, 53 (S.D.N.Y. 2014) (collecting cases). Because *Stern* only limits bankruptcy courts' power to enter final judgments, bankruptcy courts

5

may handle all pretrial proceedings and motions short of a final judgment. *In re Windstream Holdings, Inc.*, No. 19-22312, 2020 WL 833809, at *2 (S.D.N.Y. Feb. 19, 2020) (collecting cases). Once the district court has determined whether a bankruptcy court has authority to finally adjudicate a claim, it should consider whether the claim is "legal or equitable" and "weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *In re Orion Pictures Corp.*, 4 F.3d at 1101 (quoting 28 U.S.C. § 157); *see also In re N. Boulevard Automall, LLC*, 2022 WL 5184729, at *3 ("After deciding that question, the *Orion* Court instructed, a court should consider whether the claim is 'legal or equitable' and weigh 'considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law.'" (quoting *Orion*, 4 F.3d at 1101)).

  b. **Cause to withdraw the reference**

GEICO argues that it has demonstrated cause to withdraw the reference and makes several arguments in support.[4] (Def.'s Mot. 5–12.) First, that the Trustee's claims are based in state law, which are non-core. (*Id.* at 6–7.) Second, GEICO contends that since *Stern v. Marshall*, 564 U.S. 462 (2011), courts must consider whether the Bankruptcy Court has constitutional authority to finally adjudicate a claim, rather than whether the claims are core or non-core, to determine whether to withdraw the reference. (*Id.* at 8.) GEICO argues that the Bankruptcy Court does not have authority to finally adjudicate the claims because the claims do

---

[4] The Trustee does not dispute that the Motion — which was filed eight days after GEICO filed its Answer and about a month and a half after the Trustee filed the Complaint — is timely. *See, e.g., Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds*, 634 B.R. 226, 233 (S.D.N.Y. 2021) (finding that a motion to withdraw the reference filed eight days after the defendant filed an Answer was timely). Therefore, the only question before the Court is whether GEICO has demonstrated cause to withdraw the reference.

not involve a public right, the process of adjudicating the claims would not resolve a counterclaim, and the parties have not consented to final adjudication by the Bankruptcy Court. (*Id.* at 8–10.)  Third, the claims are legal, not equitable, in nature, which also militates in favor of withdrawal.  (*Id.* at 10.)  Fourth, efficiency favors withdrawing the reference because the Bankruptcy Court is not more familiar with the issues raised in Adversary Proceeding, as the Bankruptcy Court has only adjudicated matters relating to the Bankruptcy Petition, the Trustee's request to serve a pre-discovery subpoena on GEICO, and the Trustee's attempt to retain Umana's counsel, and because, given the nature of the state breach of contract claims, the Court would be required to review de novo the Bankruptcy Court's proposed findings and conclusions. (*Id.* at 11.)  Fifth, withdrawing the reference would reduce costs and not result in a delay.  (Def.'s Mot. 11.)  Sixth, because the claims do not arise under bankruptcy law, keeping the Adversary Proceeding before the Bankruptcy Court does not promote the uniformity of bankruptcy administration.  (*Id.* at 11–12.)  Finally, there is no evidence of forum shopping or tactical maneuvering.  (*Id.* at 12.)

The Trustee contends that each of the factors weighs in favor of the Bankruptcy Court retaining the reference and makes several arguments in support.  (Pl.'s Opp'n 3–4.)  First, that Judge Stong has already determined that the Adversary Proceeding is core and the Adversary Proceeding is in fact core because it involves significant estate assets that will directly affect the administration of the estate.  (*Id.* at 5–7.)  Second, the Court should not apply *Stern* and, even assuming the Bankruptcy Court lacks jurisdiction to enter a final judgment, the Adversary Proceeding should remain with the Bankruptcy Court to manage pre-trial proceedings and issue proposed findings of fact and conclusions of law, as is "established practice in this District."  (*Id.* at 8.)  Third, the parties have waived the right to a jury trial.  (*Id.*)  Fourth, "economical and

7

efficient use of judicial, Debtor, and Creditor resources mandates that this Adversary Proceeding remain in the Bankruptcy Court . . . . [because] [t]he Bankruptcy Court has extensive and intimate knowledge of the facts and legal arguments in this case by virtue of GEICO's numerous past motions, which contained substantive arguments." (*Id.* at 9–10.)

The Court considers the relevant factors and, for the reasons explained below, the Court finds that GEICO has demonstrated cause to withdraw the reference.

### i. Whether the Bankruptcy Court has authority to enter final judgment

In accordance with *Stern*, the threshold determination is whether the bankruptcy court has the constitutional authority to issue a final judgment. *Picard, Tr. for Liquidation of Bernard L. Madoff Inv. Sec. LLC v. Greiff*, 617 B.R. 198, 203 (S.D.N.Y. 2020) (citations omitted); *Lehman Bros. Holdings Inc. v. Standard Pac. Mortg., Inc.*, No. 19-CV-4080, 2019 WL 7593628, at *1 (S.D.N.Y. Aug. 23, 2019); *Thaler*, 525 B.R. at 585. To determine this, district courts must determine whether: "(1) the claim involves a public right; (2) the process of adjudicating the creditor's proof of claim would resolve a counterclaim; or (3) the parties' consent to final adjudication by the bankruptcy court." *Thaler*, 525 B.R. at 585; *see also Picard*, 617 B.R. at 203 (same). Only if one of those circumstances apply, does the bankruptcy court have final adjudicative authority. *Thaler*, 525 B.R. at 585.

Regardless of whether the Trustee's claims for breach of contract and bad faith are classified as "core," the Bankruptcy Court does not have authority to enter final judgment. First, the Trustee's claims are common law claims of breach of contract and bad faith which involve private rights, not public rights. *See Stern*, 564 U.S. at 490–93 (explaining that because "what makes a right 'public' rather than private is that the right is integrally related to particular Federal Government action[;]" "[claims] under state common law between two private parties" do not

8

fall within the public rights exception); *Roman Cath. Diocese of Rockville Ctr. v. Certain Underwriters at Lloyds, London & Certain London Mkt. Cos.*, 634 B.R. 226, 234 (S.D.N.Y. 2021) (explaining that a breach of contract claim does not implicate a public right). Second, the Trustee does not dispute that GEICO has not filed a proof of claim on Haniff's claims register, nor has it asserted any counterclaims in its Answer. (*See* Def.'s Opp'n 9.) *See also In re Arbco Cap. Mgmt., LLP*, 479 B.R. 254, 263 (S.D.N.Y. July 12, 2012) (explaining that the defendant does not seek to recover from the defendant's estate, nor filed a claim in the underlying bankruptcy action). Third, GEICO has made clear that it does not consent to final adjudication by the Bankruptcy Court. (*See* Answer; Def.'s Opp'n). *See also Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) ("[I]t was this district's standing order that automatically referred this case to the bankruptcy court, and [the defendant], by its motion, has declined to consent to final adjudication of this case in bankruptcy court.").

Instead of arguing that the Bankruptcy Court has authority to finally adjudicate the action, the Trustee contends that the proceeding is core and that this consideration militates against withdrawal. (Pl.'s Opp'n 5–7.) However, as discussed above, pursuant to *Stern*, the threshold determination is whether the Bankruptcy Court may finally adjudicate a proceeding, not whether the proceeding is classified as core or non-core. *Roman Cath. Diocese of Rockville Ctr.*, 684 B.R. at 234 (explaining that although the plaintiff "focuse[d] on whether the claims are 'core' or 'non-core,' . . . . [s]uch a determination does not seem particularly important post-*Stern*" (citing *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 486 B.R. 579, 582 n.1 (S.D.N.Y. 2013))). Even if the Court found that the claims are core, the Bankruptcy Court nevertheless does not have final adjudicative authority over them. *See id.* ("In other words, even

9

if the Court agreed that the claims here were core, it would not change the fact that the bankruptcy court would not have final adjudicative authority over them, which is the relevant question after *Stern*.")

Moreover, recent cases suggest that the matter is "non-core."[5] Claims that arise before the filing of a bankruptcy petition and do not turn on bankruptcy law, are independent of the bankruptcy case, and are therefore non-core. *See Roman Cath. Diocese of Rockville Ctr., N.Y. v. Arrowood Indem. Co.*, No. 20-CV-11011, 2021 WL 1978560, at *5 (S.D.N.Y. May 17, 2021) (finding the claims non-core for these reasons); *In re Lehman Bros. Holdings Inc.*, 532 B.R. 203, 209 (S.D.N.Y. 2015) ("[A] core proceeding . . . . is one that invokes a substantive right under the Bankruptcy Code or could only arise in the context of a bankruptcy case." (quoting *Lehman Bros. Holdings Inc. v. Wellmont Health Sys.*, 14-CV-1083, 2014 WL 3583089, at *2 (S.D.N.Y. July 18, 2014))). Ordinarily, claims of pre-petition breach of contract are non-core. *See Orion*, 4 F.3d at 1102 ("[A] breach-of-contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core."); *Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *5 ("Claims for pre-petition contract damages are usually non-core."); *In re EMS Fin. Servs., LLC*, 491 B.R. 196, 203 (E.D.N.Y. 2013) (finding a pre-petition dispute over cover under an insurance contract non-core because the "claims are state common law contract claims that could proceed in court without federal bankruptcy jurisdiction"); *In re Coudert Bros.*, No. 11-CV-4949, 2011 WL 7678683, at *5 (S.D.N.Y. Nov. 23, 2011) ("Where a contract sued upon was formed prior to the bankruptcy petition, it will

---

[5] The Trustee also contends that Judge Stong already found that the proceeding is core. (Pl.s' Opp'n 5.) However, given the fact that Judge Stong made this comment prior to the commencement of the Adversary Proceeding, it does not appear that Judge Stong was referring to the Adversary Proceeding. (*See id.*)

10

generally be highly unlikely that a proceeding based on that contract turns on the bankruptcy laws.").

The Trustee relies on *In re U.S. Lines, Inc.*, 197 F.3d 631, 638 (2d Cir. 1999), to support his argument that the claims are core, but this case is inapposite.[6] (Pl.'s Opp'n 6.) In *In re U.S. Lines, Inc.*, a Chapter 11 bankruptcy case, the Second Circuit deemed an indemnity insurance dispute to be "core" because resolving the dispute would have a "significant impact on the administration of the estate." *Id.* There, the insurance proceeds represented the only potential source of cash available to the personal injury plaintiffs, but the insurance policies did not make insurance proceeds available until the Trust had already paid the claims. *Id.* In addition, there was a risk that the payment scheme employed to pay the claims would be deemed to not satisfy the pay-first requirement after the assets earmarked for other creditors were used to pay the personal injury claimants. *Id.* at 639. The Second Circuit explained that a declaratory judgment determining whether the chosen payment plan would trigger the indemnification obligation and the amounts payable under the contracts was necessary for the bankruptcy court to fulfill its core function of allocating assets among creditors equitably, and therefore the proceeding was "core." *Id.*; *see also In re Cnty. Seat Stores, Inc.*, No. 01-CV-2966, 2002 WL 141875, at *5 (S.D.N.Y. Jan. 31, 2002) (finding an insurance dispute core for similar reasons).

However, the Second Circuit has since limited *U.S. Lines*' holding to its facts. *See Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005) (explaining that the Circuit Court's holding in *U.S. Lines* was based on "mutually re-enforcing effects of two factors," that

---

[6] The other cases cited by the Trustee are also inapposite, as they concern post-petition contracts, which are part of the estate, and pre-petition contracts that affected the allowance or disallowance of claims against the estate. *See In re DPH Holdings Corp.*, 448 F. App'x 134, 136–37 (2d. Cir. 2011); *Norkin v. DLA Piper Rudnick Gray Cary, LLP*, 2006 U.S. Dist. LEXIS 14254, at *9 (S.D.N.Y. 2006).

11

the policies were "the only asset available" and "were pay-first policies that required the trustee to pay the claims and then seek indemnification"); *see also Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *6 (collecting cases finding that the holding *of U.S. Lines* had been limited by *Mt. McKinley*). Unlike in *U.S. Lines*, the proceeding before this Court is based on a contract dispute regarding GEICO's failure to defend Haniff, rather than an insurance indemnity claim. The dispute does not concern or involve pay-first policies, even if the damages sought are the only assets with which the Trustee could repay Umana. *See Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *6 (finding the claims non-core because the insurance proceeds are not the estate's only asset and because the policies did not include pay-first provisions). In addition, unlike in *U.S. Lines*, where the bankruptcy court would have been unable to equitably distribute the assets without first deciding the dispute, in this case, all the creditors in the Bankruptcy Case are in the same class and one creditor holds 99.68% of the universe of claims. (Def.'s Reply 6.) Thus, the Bankruptcy Court can fulfill its core function of allocating assets under Chapter 7 without resolving the contract dispute.

More critically, as explained above, even if the claims are core, the relevant question is whether the Bankruptcy Court has authority to finally adjudicate the claims, which the Bankruptcy Court does not. This factor weighs in favor of withdrawal. See *Roman Cath. Diocese of Rockville Ctr.*, 634 B.R. at 237 (finding that although the claims for breach of contract and declaratory judgment based on the insurer's failure to defend and indemnify were "core," the bankruptcy court lacked authority to finally adjudicate the claims and therefore this factor "strongly weigh[ed] in favor of withdrawal of the reference").

### ii. Whether the claims are equitable or legal

In determining whether to withdraw a reference, courts also consider whether the claim is legal or equitable and whether, as a result, the litigants have a right to a jury trial. *Id.* at 237 (citation omitted). Actions seeking damages for breach of contract are generally considered to be legal rather than equitable. *Id.*

While the claims in this case are legal ones, to which the parties have a right to a jury trial, the parties have not made a jury demand in this matter. *See In re N. Boulevard Automall, LLC*, 2022 WL 5184729, at *4 (finding that this factor did not weigh in favor of withdrawal because the plaintiff had not made a jury demand). Moreover, even if the Trustee had made a jury demand, the Court could find the case was unlikely to reach trial and therefore that it was better for the Bankruptcy Court to decide pre-trial matters. *See Roman Cath. Diocese of Rockville Ctr.*, 634 B.R. at 237 (finding that the factor weighed only slightly in favor of withdrawal for this reason); *In re TS Emp., Inc.*, 20-CV-9558, 2021 WL 5087928, at *3 (S.D.N.Y. Nov. 2, 2021) ("The jury trial factor does not strongly favor withdrawing the reference when the case is not close to trial-ready."); *see also In re Arbco Cap. Mgmt., LLP*, 479 B.R. at 267 ("[W]ithdrawing the reference is premature where discovery has not commenced and plaintiffs have not yet survived a motion to dismiss."). Bankruptcy courts are able to handle all pretrial proceedings and motions short of a final judgment. *In re Windstream Holdings, Inc.*, 2020 WL 833809, at *2 (collecting cases); *see also Orion*, 4 F.3d at 1102 (explaining that cases that are unlikely to go to trial may be left with the bankruptcy judge for management of pre-trial proceedings). Because the parties have not made a jury demand in this matter and because the case is not close to trial ready, this factor is neutral.

13

### iii. Efficiency

In a case where the bankruptcy court does not have authority to render a final judgment, the district court is required to review de novo the bankruptcy court's proposed findings of fact and conclusions of law. *Roman Cath. Diocese of Rockville Ctr.*, 634 B.R. at 238. While this process is "generally inefficient," in certain cases where the bankruptcy court is familiar with the types of claims and the facts relevant to the parties' dispute, it may be more efficient to keep the proceeding in the bankruptcy court for pretrial proceedings. *Id.* (first citing *Dynegy Danskammer*, 905 F. Supp. 2d at 533; then citing *Lehman Bros. Holdings v. Hometrust Mortg. Co.*, No. 15-CV-304, 2015 WL 891663, at *4 (S.D.N.Y. Feb. 25, 2015)); *see also In re N. Boulevard Automall*, 2022 WL 5184729, at *3–4 (finding that it would be more efficient for the bankruptcy court to handle pretrial proceedings because the bankruptcy court was familiar with the core claims and had presided over the adversary proceeding and bankruptcy petition for multiple years); *In re Jacoby & Meyers—Bankr. LLP*, No. 14-CV-10641, 2017 WL 4838388, at *5–6 (S.D.N.Y. Oct. 25, 2017) (finding it would be more efficient for the bankruptcy court to handle all pretrial proceedings because the bankruptcy court had already adjudicated motions to dismiss, was familiar with the issues and had experience with handling the type of claims and the discovery issues presented); *In re Arbco Cap. Mgmt., LLP*, 479 B.R. at 267–68 (finding that judicial efficiency weighed against withdrawal of the proceeding, which involved core and non-core claims, because the bankruptcy court was familiar with the facts and the type of claims). In contrast, courts have explained that "[c]ontract disputes are the bread and butter of district courts" and "bankruptcy courts do not have any 'specialized knowledge' that 'will contribute to swifter resolution of'" these types of claims. *Roman Cath. Diocese of Rockville Ctr.*, 634 B.R. at 238 (quoting *Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *8).

14

Because the claims in this matter arise under contract law rather than bankruptcy law, and because contract disputes are "the bread and butter of district courts," withdrawing the reference is more efficient than having the Bankruptcy Court first issue proposed findings of fact and conclusions of law. *See Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *8–9 (finding efficiency weighed in favor of withdrawal because the claims arose under contract law, rather than bankruptcy law, and the bankruptcy court did not have any specialized knowledge that would enable it to resolve the claims more efficiently); *see also Nitel, Inc. v. Cerberus Bus. Fin., LLC*, No. 21-CV-05996, 2021 WL 5770933, at *2 (S.D.N.Y. Dec. 3, 2021) ("[T]he [c]ourt is unpersuaded that efficiency is best served by maintaining a non-core proceeding in bankruptcy court until the time that the parties are ready to commence trial."). While the Bankruptcy Court is familiar with the underlying bankruptcy proceedings and adjudicated the Trustee's motion for permission to serve a pre-suit Bankruptcy Rule 2004 subpoena on GEICO, the Adversary Proceeding did not commence until October of 2022 and no substantive motions have been filed in the Adversary Proceeding, other than this motion to withdraw the reference. *See Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *8–9 (finding that the bankruptcy court was not more familiar with the facts and underlying issues where the bankruptcy court had not yet decided any substantive motions relating to the claims). Further, even if the Bankruptcy Court is more familiar with the underlying facts and the parties, the Court still finds that it more efficient to withdraw the reference, given the nature of the claims. *See also Nitel, Inc.*, 2021 WL 5770933, at *2 (explaining that it is not clear that it is more efficient to keep a non-core proceeding in bankruptcy court); *c.f. In re N. Boulevard Automall, LLC*, 2022 WL 5184729, at *3–4 (finding that it would be more efficient for the bankruptcy court to handle pretrial proceedings in part because the bankruptcy court was familiar

15

with the type of claims); *In re Jacoby & Meyers-Bankr. LLP*, 2017 WL 4838388, at *5–6 (finding it would be more efficient for the bankruptcy court to handle all pretrial proceedings where it had experience with handling the type of claims and the discovery related to those claims).

####      iv.   Uniformity of bankruptcy administration

Courts also consider whether withdrawal would hinder the uniformity of bankruptcy administration. *Roman Cath. Diocese of Rockville Ctr.*, 634 B.R. at 238. Because the claims do not arise under bankruptcy law, but state contract law, this factor is neutral. *See id.* (explaining that this factor is neutral where the claims are based on state law and do not arise under bankruptcy law (first quoting *Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *10; then citing *Dynegy Danskammer*, 905 F. Supp. 2d at 533)); *In re TS Emp., Inc.*, 2021 WL 5087928, at *4 (same).

####      v.   Costs and delay

In addition, courts weigh the costs and delay to the parties, in deciding whether to withdraw a reference. *Roman Cath. Diocese of Rockville Ctr.*, 634 B.R. at 238 (citing *Orion*, 4 F.3d at 1101). The Court finds that these factors militate in favor of withdrawal; by avoiding the parties having to first litigate in the Bankruptcy Court and then in the district court, the parties can reduce litigation costs and avoid delays. *See id.* (finding that the costs to the parties weighed slightly in favor of withdrawal due to the increased costs of litigating the issues first before the bankruptcy court and then before the district court); *c.f. In re TS Emp., Inc.*, 2021 WL 5087928, at *3–4 (finding that although the costs to the parties would be slightly lower, the decreased efficiency associated with withdrawing the reference would result in a greater delay to the parties). Therefore, this factor weighs slightly in favor of withdrawal.

16

### vi. Forum shopping

Lastly, district courts consider whether the defendant is engaged in forum shopping in moving to withdraw the reference. *Roman Cath. Diocese of Rockville Ctr.*, 634 B.R. at 238–39 (first citing *Orion*, 4 F.3d at 1101; then citing *Scott v. AIG Prop. Cas. Co.*, No. 17-CV-1052, 2017 WL 1380607, at *4 (S.D.N.Y. Apr. 17, 2017)). There is no indication that GEICO is engaging in forum shopping. *See Roman Cath. Diocese of Rockville Ctr., N.Y.*, 2021 WL 1978560, at *11 ("[T]here is no reason to think that forum shopping, 'as opposed to a genuine desire for more efficient adjudication,' influenced [the defendant's] decisions to file its motion." (quoting *Dynegy Danskammer*, 905 F. Supp. 2d at 533)). In addition, because the Bankruptcy Court cannot enter the final judgment in this case, withdrawal of the reference does not promote forum shopping, as the case will eventually come before a district court. *See id.* ("Because the [b]ankruptcy [c]ourt cannot enter a final judgment over these claims, this matter will end up before a district court regardless of the outcome of this motion . . . [and] withdrawal of the bankruptcy reference does not promote forum shopping." (citing *Brown Publ'g Co. v. Brown*, No. 15-MC-0531, 2017 WL 455418, at *5 (E.D.N.Y. Feb. 1, 2017))). Therefore, this factor does not weigh against withdrawal.

As each of the above factors weighs in favor of withdrawal or is neutral, the Court finds that GEICO has demonstrated sufficient cause to withdraw the reference. *See id.* (granting the motion to withdraw the reference where the bankruptcy court did not have authority to issue the final judgment as to the non-core claims and considerations of efficiency weighed in favor of withdrawal).

### III. Conclusion

For the reasons explained above, the Court grants GEICO's motion to withdraw the reference.

Dated: June 26, 2023
Brooklyn, New York

SO ORDERED:

/s/ MKB
MARGO K. BRODIE
United States District Judge